248 N.J. Super. 116 (1991)
590 A.2d 268
VINCENT COSTANZO, PLAINTIFF,
v.
ANTOINE COSTANZO AND NORMAN ROBBINS, DEFENDANTS.
NORMAN ROBBINS, THIRD PARTY PLAINTIFF,
v.
JOSEPH MONICO, THIRD PARTY DEFENDANT.
Superior Court of New Jersey, Law Division Union County Civil Action.
Decided March 8, 1991.
*118 William A. Daniel for plaintiff.
Norman Robbins, defendant, pro se.
MENZA, J.S.C.
Plaintiff moves for summary judgment. The question in this case is whether an attorney has a duty to turn over funds pursuant to an assignment of funds executed by his client, where the client subsequently rejects the assignment and directs the attorney to pay the funds directly to him.
The facts are these. Over a period of years, defendant, Antoine Costanzo (Antoine), had borrowed various sums of money from his father, plaintiff, Vincent Costanzo (father), which totaled $10,154.26.
In September 1987, Antoine promised his father the sum of $5,000 out of the proceeds of any settlement he might make of a personal injury claim that he had, if the father would agree to forgive the balance that was due to him. The father then informed his lawyer, Joseph Monico, (Monico), of what occurred between him and his son. On September 28, 1987, Monico wrote the following letter to defendant, Norman Robbins (Robbins), Antoine's attorney. The letter states, in pertinent part:

*119 I have been advised by Vincent Costanzo, father of Antoine Costanzo, that you are the attorney for his son, in connection with a claim for personal injuries involving a motor vehicle accident and that there is a suit pending in Middlesex County.
Antoine is indebted to his father for $5,000.00, plus interest for the money loaned to the son about 3 years ago. It also appears that since Antoine was a passenger in the vehicle involved in the accident there is a good possibility of a favorable outcome in the action. Mr. Costanzo is hesitant in filing a suit to recover the money so loaned, unless it is made necessary to do so. It is suggested that the son authorize you to withhold in escrow, from the proceeds recovered in the action or settlement, for the benefit of his father in repayment of the loan and the approved interest. If Antoine authorizes you to do so, and upon your advising me accordingly, I shall withhold institution of the suit for the collection of the debt. Please let me hear from you at your earliest convenience.
On May 1, 1988, Antoine asked his father for a loan of $1,000 explaining to him that a settlement was near, and that the father would be paid out of the proceeds of the settlement. The father refused to loan any more money to his son unless and until he had something in writing evidencing the amount of money due to him. On May 2, at the father's request, his lawyer Monico prepared a document which the son signed and the father then gave to his son the sum of money requested by him. The document stated:
I, ANTOINE COSTANZO, the undersigned, do hereby acknowledge that I am indebted to my father, Vincent Costanzo, of South Wood Avenue, Linden, in the sum of $6,000.00, resulting from monies he has heretofore loaned to me and I do hereby authorize my attorney, Norman Robbins, Esq, of Amboy Avenue, Woodbridge, to withhold from the proceeds of any settlement which he may hereafter receive in settlement of the automobile accident claim which he is presently handling on my behalf and I do hereby authorize and direct him to pay the said sum so withhold to my said father, in full payment of said loan.
On May 18, 1988, Monico forwarded the document to defendant Robbins. Robbins apparently did not respond and so on August 16, 1988, Monico again wrote to Robbins, reminding him of his client's claim to the expected settlement monies.
On August 18, 1988, Robbins wrote a letter to Monico acknowledging receipt of Monico's letter and informing him that the case had been settled. The letter also stated: "I will contact you upon distribution of monies, but Mr. Costanzo *120 wishes to discuss this claim with his father before authorizing any disbursement."
Monico responded by a letter, in which he advised Robbins to forward the settlement monies due to his client directly to his office. On September 1, 1988, Robbins wrote the following letter to Monico:
The case in which I have been representing Antoine Costanzo has been settled. No money has yet been received.
I frankly would prefer not to be drawn into any dispute between father and son, and I have not been authorized to make any disbursement to you or to your client Vincent Costanzo.
I believe that Antoine wishes to discuss the entire matter with his father, to amicably resolve the matter, and I would much prefer to allow it to be resolved that way, if possible.
Accordingly, I am simply sending a copy of this letter to Antoine, with the suggestion that he try to resolve the matter with his father without my representing him or anyone in their dispute.
On October 21, 1988, Robbins and Monico had a telephone conversation in which Robbins informed Monico that he was not authorized by his client to disburse funds to the father.
The settlement funds were thereafter received. Antoine refused to authorize Robbins to turn over any monies to his father, and after payment of Robbins' fees, the total amount due to the son was paid over to him.
Plaintiff contends that the document executed by Antoine Costanzo was an assignment which Robbins was obliged to honor and that his failure to do so renders him liable to plaintiff. The law is that "A notice of an assignment of a chose in action charges the debtor with the duty of payment to the assignee." Russell v. Fred A. Pohl Co., 7 N.J. 32, 80 A.2d 191 (1951). As stated in Corbin on Contracts:
Before the obligor has been notified of the assignment, he is justified in believing that his duty is still owed to his original obligee, the assignor. After notice of the assignment has been given to the obligor or knowledge thereof received by him in any manner, the assignor has no remaining power of release. The obligor must pay the assignee. [2 Corbin, Contracts (1950), § 473]
*121 Defendant responds that the document was merely an authorization  a promise to pay  which his client subsequently rescinded, and that he was therefore obligated both ethically and legally to disburse the settlement funds in accordance with the wishes of his client. Robbins further contends that even if the instrument could be characterized as an assignment it speaks only in terms of being an authorization, and he was, therefore, not aware that it was an assignment which obligated him to disburse the funds to the father. He further argues that, in any event, the purported assignment was of a tort claim which cannot legally be the subject of an assignment.
Was the instrument intended to be an assignment of funds by Antoine to his father?
N.J.S.A. 2A:25-1, provides:
All contracts for the sale and conveyance of real estate, all judgments and decrees recovered in any of the courts of this state or of the United States or in any of the courts of any other state of all the United States and all choses in action arising on contract shall be assignable, and the assignee may sue thereon in his own name.
Any "specific thing," debt or chose in action may be the subject of an assignment. 6 Am.Jur.2d § 1. Obviously, that which is not in existence or cannot be identified cannot be assigned.
... [I]n order to effect a legal assignment there must be evidence of an interest to assign or transfer the whole or part of some specific thing, debt or chose in action and the subject matter of the assignment must be described sufficiently to make it capable of being readily identified.... [3 Williston, Contracts, (3 ed. 1960), § 404 (quoting from the case of Russell v. Texas Consolidated Oils, 120 F. Supp. 508 (D.N.M. 1954))].
A tort claim is a chose in action and at first blush it would appear to be assignable. But in New Jersey, as a matter of public policy, a tort claim cannot be assigned.
It has always been held that the right to bring an action in the courts of this state is possessed by the injured person, alone, unless the injured person assigns his right to someone else which cannot be done before judgement when the action sounds in tort. [United States Casualty Co. v. Hyrne, 117 N.J.L. 547, 552, 189 A. 645 (E. & A. 1936)].
....

*122 A claim for damages in tort for personal injuries cannot be made the subject of an assignment before judgment. [DiTolvo v. DiTolvo, 131 N.J. Super. 72, 79, 328 A.2d 625 (1974)].
If the tort claim could not be assigned by Antoine, what then, if anything, could he have assigned? Plaintiff argues that it was not the tort claim which Antoine assigned to his father, but the proceeds of the expected settlement from the tort claim. Defendant responds that, even if this were the case, there were no funds in existence at the time of the purported assignment, and thus, there were nothing which Antoine could assign. Obviously, one cannot assign something that doesn't exist.[1] Nor can one assign a right which may only have a possible future existence. For example:
... It is generally held that an assignment of a right expected to arise under a contract not yet formed, or employment not yet existing, is ineffective to transfer such a prospective `right.' [3 Williston, supra, § 413].
On the other hand, a right to future performance of an existing obligation, can be the subject of an assigment. For example:
a right expected to arise in the future under a contract or employment in existence at the time of the assignment can be effectively assigned. [Restatement, Contracts 2d, § 154(1) (1949)].
The purported assignment in this case was not of an expected settlement fund from an expected tort claim. It was an assignment of a right to monies from an expected settlement of an existing tort claim. The "specific thing" which was intended to be assigned was a sum of money from an identifiable fund arising at a future time as a result of the fulfillment of a condition (a settlement of the tort claim). The right to the proceeds of the expected settlement is therefore assignable.
A right which is conditional ... is not for that reason incapable of effective assignment. [Restatement, Contracts 2d, supra, § 155].
*123 Was the assignment effective as against Robbins, so as to render him liable to plaintiff for his failure to disburse funds in accordance with the assignment? The answer to this question depends on whether Robbins was properly notified of the assignment. Although there are no New Jersey cases which have addressed this precise issue regarding an attorney's obligation to disburse funds in a situation where the client has executed an assignment, this court has located two cases from other jurisdictions which have addressed the question. In both cases, the court held that the attorney was obligated to pay over funds held by him to the assignee in accordance with the assignment made by the client.
In Bonanza Motors Inc. v. Webb, 104 Idaho 234, 657 P.2d 1102 (Ct.App. 1983), a creditor brought an action against the debtor's law firm to recover on the debtor's assignment to the creditor of a portion of a settlement of a prior law suit. The law firm had been notified of the assignment and had accepted it but failed to turn over the monies from the settlement to the creditor because the debtor client had instructed the attorney not to do so.
The court held that the law firm was liable to the creditor because:
(1) the debtor's interest in a settlement was assignable and (2) the debtor's request of the law firm to endorse the settlement draft did not relieve the law firm of its duty under the assignment and (3) attorney disciplinary rules which require an attorney to promptly pay money in the possession to a client did not shield the law firm from responsibility for failing to pay on the assignment. [Ibid.]
In Brinkman v. Moskowitz, 38 Misc.2d 950, 238 N.Y.S.2d 876 (App.Div. 1962), the court held that an attorney who had notice of an assignment by his client to a physician of a portion of the proceeds of the client's injury claim, was liable to the physician for paying settlement proceeds to the client.
There was no question that the attorneys in the Bonanza and Brinkman cases were aware of the nature of the documents sent to them since the documents were clearly identified and *124 acknowledged by the lawyers as being assignments. But, did the document in this case, along with the correspondence between the attorneys, fully apprise Robbins of the nature of the transaction entered into by Antoine and his father?
As I already stated, the document, although expressed in terms of an authorization, constituted an assignment because the facts of this case clearly demonstrate that the son intended to transfer funds to his father. Therefore, as to the father and son, the document was an effective assignment. But even though an assignment may be effective as between the parties, it may still be ineffective as against the obligor.
An assignment, good as between assignor and assignee, may be made in various forms. "It may be addressed to the debtor. It may be couched in the language of command. It may be a courteous request. It may assume the form of mere permission." But a notice in some of these forms may be inadequate to express to the debtor the fact that the rights have been assigned and that the named payee is not a mere agent of the assignor to collect. [Talcott v. Lewis, (1040) 3 All Eng. 502 (C.A.); citation omitted].
In order for the assignment to be effective against the obligor (fiduciary), it must clearly express to him that a right has been assigned.
There is operative notice if the obligor is aware of facts that would cause a reasonable man to make inquiry before acting.... [Farmers Exchange v. Walter M. Lowney Co., 95 Vt. 445, 115 A. 507 (1921)].
The instrument in this case is neither identified as being an assignment nor suggestive that it is one. It speaks only in terms of authorization. Under the circumstances, a reasonable person could readily conclude, as Robbins did, that the document was merely an authorization from Antoine to his lawyer authorizing the lawyer to disburse funds to the father. That's what the document appears to be on its face and that's what Robbins thought it to be.
If one considers an attorney's duty to his client, to account for funds which he holds in trust for his client, as well as the scope of his authority as an agent of his client, one must conclude that an instrument which is intended to be an assignment of the client's funds must contain terms which are clear *125 and concise so that the attorney will have proper direction as to the distribution of his client's funds.
Since Robbins properly considered the document in question as a mere authorization from his client to disburse funds to the father, he was correct to accept the rescission of that authorization and abide by his client's instructions to disburse funds directly to him.
Motion denied.
NOTES
[1] U.C.C. § 2-105(2) provides:

Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are "future goods." A purported present sale of future goods or of any interest therein operates as a contract to sell.